F7rifanp ag                    PLEA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          14 Cr. 305 KMK

5   BRIAN FANELLI,

6                Defendant.

7   ------------------------------x

8                                        July 27, 2015
                                         12:15 p.m.
9                                        White Plains, N.Y.

10  Before:

11                 HON. KENNETH M. KARAS,

12                                   District Judge

13                      APPEARANCES

14  PREET BHARARA
         United States Attorney for the
15       Southern District of New York
    ANDEN CHOW
16  ANDREW GOLDSTEIN
         Assistant United States Attorneys
17
    MICHAEL BURKE
18       Attorney for Defendant

19                      PLEA

20

21

22

23

24

25

F7rifanp ag                    PLEA

1          THE COURTROOM DEPUTY:  United States v. Brian Fanelli.

2     Will counsel please state their appearances.

3          MR. CHOW:  Anden Chow for the government.  With me at

4     counsel table is Andrew Goldstein from our office.

5          MR. BURKE:  Michael Burke for Mr. Fanelli.

6          THE COURT:  Good afternoon.  Please be seated.  All

7     right, Mr. Burke, my understanding is that your client is going

8     to enter a plea of guilty to the third count in the indictment,

9     is that right?

10          MR. BURKE:  That's right, your Honor.  There was an

11     issue that the government raised with me for the first time

12     right before we began the proceeding, about a quarter to twelve

13     and I'd like to address that at sidebar if we may.  We are

14     prepared to move forward on a plea to Count 3, but there's a

15     issue as to the effect of that plea what their stated position

16     was going to be as to detention, and where we may be, because I

17     don't want to move forward on the plea -- I was under the

18     belief based on the discussions I had with the government that

19     he would not be going in today and they'd consent to him

20     remaining out and the conditions remaining in place upon an

21     entry of the guilty plea.  And I want to discuss that with the

22     Court if we can or we can do it on the record.

23          THE COURT:  I'm loath to do anything in a criminal

24     case off the record.  Why do we need to do it at the sidebar?

25          MR. BURKE:  What I'd like to present to the Court is

1    when we spoke late Friday the government's position was that he

2    would not need to be prepared to go in today.  I do believe

3    that there are extraordinary circumstances present here.

4              THE COURT:  The government has changed its position?

5              MR. BURKE:  The position has waffled a bit.

6              THE COURT:  All right, government.

7              MR. CHOW:  I don't believe our position has waffled.

8    From the beginning we stated that we would not oppose a motion

9    for the defendant to be out on bail pending sentencing.  What

10   we did bring to Mr. Burke's attention earlier today is that we

11   explained to him the statutory regime that governs in this

12   circumstance and we wanted to make sure that he was aware of

13   what the standard was in terms of what the Court needed to find

14   in order for the defendant to be continued on bail pending his

15   sentence.

16             MR. BURKE:  I guess from what I see, as far as the

17   change of position, it is consenting versus not opposing which

18   I think are different.  From the government's perspective,

19   that's great, they're not going to oppose.  The information was

20   that he should not be prepared to go in on Monday if we entered

21   a plea.  I know what the statutory regime is and what's

22   required for the Court to find.  I do think we can establish

23   that.  But if the Court is to find that I don't establish that

24   then my client would have to go in today and he's not prepared

25   to do that as far as certain arrangements that would need to be

made, family arrangements, financial arrangements, arrangements

with the Bureau of Prisons and the U.S. Marshals that I would

need to make, because of his former position, where he would be

housed.  I know the Court is loath to give a preview of what

the rulings will be, but I think we need to have a sense of

that before we move forward on the plea.

Just so I could give you, perhaps this will assist the

Court, my client has been under treatment through a treatment

provider for the last 18 months, both weekly sessions and

monthly sessions with the psychiatrist and an offense specific

counselor.  I know from past experiences that going in would be

a break in that continuum of care which other courts have found

to be extraordinary circumstances in these types cases.  The

report from Dr. Friedman, which has been previously submitted

to the Court, that my client does not pose a risk or is a

danger to the community is also an important factor for the

Court to consider here.  He's not pleading to the mandatory

minimum charge, the possession charge.  He's been fully

compliant with Pretrial Services.  I have been in contact with

Leo Barrios, there has been no issues with him on Pretrial

Services.

The most important thing is the break in the continuum

of care where doctors and counselors in this area say that's a

very important factor to allow them to continue with that care

up until the time of incarceration where they can determine

F7rifanp ag                         PLEA

1    where the Bureau of Prisons will house them and hopefully get

2    some form of that care moving forward.

3            THE COURT:  It is true that sometimes there is a

4    difference between we're not going to oppose and we consent.

5    I'm not sure if this is one of the circumstances or not.  If

6    there was a change of that verbiage, Mr. Burke, I understand

7    your hesitation.

8            MR. BURKE:  Whether it was consent or opposed, it was

9    that he should not be prepared to go in and that's what I

10   relied on in speaking with my client throughout the weekend in

11   preparing him for today.  But nonetheless I think that the

12   grounds that I stated would permit him to remain at liberty.

13           THE COURT:  The flip side of it is that it's not the

14   government's call.  Even if the government thinks your client

15   should go in I could say no, he shouldn't.  If the government

16   says we don't oppose or we agree with everything Mr. Burke

17   says, I could still say those aren't extraordinary reasons

18   under 3145(c).

19           MR. BURKE:  This isn't a circumstance where the

20   government is saying I don't believe those rise to

21   extraordinary circumstances.

22           THE COURT:  I understand.

23           (Pause)

24           THE COURT:  The treatment that Mr.~Fanelli's been

25   getting over the last 18 months, Mr. Burke, I understand that

F7rifanp ag                          PLEA

1   no treatment should be disrupted, but I guess I have two

2   questions.  One is what exactly is the treatment, and second of

3   all, if there's the possibility of a prison sentence the

4   argument can be made that there's an inevitability of

5   disruption.  Is it a temporal question?  Is it that between now

6   and sentencing there's something crucial?

7           MR. BURKE:  He's been treated for depression anxiety

8   and also treating with a counselor relating to the underlying

9   offense conduct.  That treatment he's not going to be

10  receiving.  And knowing from the experts in this area, they say

11  that treatment is crucial.  Whether he gets that at the BOP, I

12  think that's for another day, but he'll be housed temporarily,

13  where I know he's also on a regime of medication that he would

14  not likely get by being incarcerated.

15          THE COURT:  Why would he not get it?  Suppose I issue

16  an order that he gets it.

17          MR. BURKE:  Let me take a step back as to my client

18  being prepared today if the Court is so inclined today that I

19  haven't --

20          THE COURT:  These questions are not meant to suggest

21  I'm inclined one way or the other.  I didn't know this was

22  going to be an issue.  I haven't had a chance to think about

23  it.  Any thinking would require hearing from you in particular.

24          MR. BURKE:  The point being that here, although I know

25  an order is great from the federal court, it's very often, it

F7rifanp ag                    PLEA

1   should be followed but the treatment providers at Westchester

2   County Jail and at MCC, they'll get the order, but they may

3   change to a different type of medication, the psychologist or

4   psychiatrist may only be there once a month so they'll say

5   we'll comply but they're not in until the end of July where he

6   could be assessed to be on a medication regime and now he's no

7   longer receiving the medication that other treatment providers

8   has said is necessary.

9            It's not just the counseling session but the

10  medication regime that is a compelling factor to allow him to

11  remain at liberty pending sentence.  This is not a mandatory

12  minimum count.  There is a guideline range here.  But this is

13  not a mandatory minimum count where incarceration is certain.

14  So I think that's also a factor -- if it was a mandatory

15  minimum count I think I would have less of an argument here but

16  nonetheless for all of the reasons stated, he has a very strong

17  support network who are present in court today, his wife, his

18  daughter, his sister flew up from Georgia over the weekend once

19  we worked out the plea arrangement.  They will remain

20  supportive.

21           But I think that this is not a case that would warrant

22  him going in when there are extraordinary circumstances that

23  we've pointed to that would be sufficient.  He's been fully

24  compliant with Pretrial.  He's been on strict home confinement

25  electronic monitoring, Judge, so he has been in a confined

F7rifanp ag                    PLEA

1    setting for lack of a better word.

2              THE COURT:  Any of the medication that he's taking is

3    it meant to address physical issues as well as mental issues?

4              MR. BURKE:  It's for depression and anxiety.

5              THE COURT:  Okay.

6              MR. BURKE:  But I know that some of the medication

7    that he's on, I know from past experience that Westchester

8    County Jail and MCC will not allow him to take.

9              THE COURT:  They use substitutes.

10             MR. BURKE:  I don't even know if they use substitutes.

11   They can treat depression and anxiety by other means outside of

12   what he's on now.

13             THE COURT:  They're not going to ignore a court order,

14   they're not.

15             MR. BURKE:  They just may apply it more slowly than

16   they should.

17             THE COURT:  I will tell you, I don't have any patience

18   for that nonsense.  I've had wardens here when I think that

19   that's going on.  That's not going to happen.  I understand

20   your concern, I understand you have some anecdotal stories, but

21   I've got my own and I just would not allow that to happen.

22             MR. BURKE:  The other piece, though, as far as, had we

23   known this was going to be the position or change of position,

24   we would have been in contact with the U.S. Marshals, the

25   Bureau of Prisons.  Because he can't just be housed in

F7rifanp ag                          PLEA

1    Westchester, we know that.  I don't think he could be housed at

2    MCC, MDC.  I don't know where he would be housed because of his

3    prior position as chief of police.  But it's not likely in this

4    area.

5              And that's also, I'm not familiar with where he may be

6    as to having that continuum of care but I don't think it would

7    be immediate even with a federal court order to allow for that

8    without allowing us to have the opportunity to have those

9    discussions, based on what I put forth here and the

10   government's not objecting to those, that position, that

11   there's a sufficient basis to allow him to remain at liberty

12   until the time of sentencing.

13             THE COURT:  Okay.

14             Did you want to say anything, Mr. Chow?

15             MR. CHOW:  I would just like to add one more time that

16   the government hasn't changed its position.  If consent would

17   be a better word, sure, the government is happy to consent.

18   All that happened today is the government informed defense

19   counsel that it was out of our hands and that the statutory

20   regime required the Court to make a certain finding and that

21   continues to be our position.

22             THE COURT:  Okay.  What the courts have said about

23   3145(c) and in particular the exceptional reasons criteria is

24   that it means a unique combination of circumstances giving rise

25   to situations that are out of the ordinary.  And that's from

F7rifanp ag                    PLEA

1   the Second Circuit's decision in United States v. Lea, 360 F.3d

2   401, 403.  Sometimes what the Circuit has said is that can

3   involve unusual legal or factual questions or sometimes even

4   substantial questions that could be sufficiently exceptional to

5   satisfy that criteria but it doesn't require any sort of legal

6   or factual novelty.  And that's from DiSomma, 951 F.2d 494,

7   497.

8           On the other hand, the Circuit has also said that

9   normally purely personal circumstances don't typically rise to

10  the level of an exceptional reason.  That's from Lea at 403.

11  But nonetheless what courts have done in our Circuit and

12  elsewhere is find a combination of unique facts that include

13  personal factors that could be considered exceptional so as to

14  warrant release.  Sometimes they involve the survival of a

15  business.  Sometimes they involve childcare.  And at the end of

16  the day what the courts have said is that the "somewhat

17  amorphous standard invites a case-by-case evaluation."  United

18  States from Lippold, 175 F.Supp.2d 537, 540, which means "the

19  test is necessarily a flexible one and district courts have

20  wide latitude to determine whether a particular set of

21  circumstances qualifies as exceptional."  That's a direct quote

22  from the Lea decision at page 403.

23          It sounds like here the proffer is that Mr.~Fanelli

24  has been undergoing some substantial treatment that involves

25  counseling, it involves prescribed medication meant to deal

F7rifanp ag                    PLEA

1    with anxiety and depression and some of the case-specific

2    issues, and if he were to be remanded today or after a plea

3    that that treatment would be disrupted, the counseling sessions

4    would obviously be disrupted, and that the medication

5    provisions would at best be bumpy and at worst there would be a

6    disruption in the medication as well.  And I take Mr. Burke at

7    his word that he's had cases where there have been instances

8    that the prison officials don't prescribe the medication, they

9    elect to treat other ways.  That doesn't surprise me.  But

10   nonetheless, I will assume that to be true.

11          And then there is the fact that Mr.~Fanelli has been

12   subject to house detention but that he's been 100 percent

13   compliant.  Implicit in all that is that he's not a risk of

14   flight nor a danger.  Those are not exceptional circumstances

15   obviously.  Presumably that should be the norm.  But it's a

16   combination of the circumstances that the Court is required to

17   consider.  And I can see a sufficiently compelling case to be

18   made including the fact there's no mandatory minimum here,

19   there's no prior criminal history, there's a strong support

20   network.  I think all of those are factors that probably meet

21   the standard.

22          So what do you want to do?

23          MR. BURKE:  With that in mind, your Honor, I think

24   we're prepared to move forward with the plea.

25          THE COURT:  All right.

F7rifanp ag                    PLEA

1              Mr.~Fanelli, good afternoon.

2              THE DEFENDANT:  Good afternoon, your Honor.

3              THE COURT:  My understanding is that pursuant to a

4    plea agreement dated July 24 of this year you're going to

5    withdraw your previously entered not guilty plea and enter a

6    plea of guilty to the third count of the indictment.  Is that

7    correct?

8              THE DEFENDANT:  That is correct.

9              THE COURT:  Okay.  Before I accept your plea I'm going

10   to be asking you a series of questions.  You should know that

11   there are two reasons for these questions.  One is to make sure

12   that you're pleading guilty to this charge because you are

13   guilty and you're not pleading for some other improper reason;

14   and the other is to make sure that you understand the

15   consequences of being convicted of this charge by way of a

16   guilty plea.

17             Obviously, this is a very important decision for you

18   to make, it's a decision you would not want to make or

19   otherwise follow through on unless you were 100 percent

20   comfortable.  Accordingly, at any point during this proceeding

21   if you become uncomfortable because of a question you're asked,

22   because of something somebody says, and you want to speak to

23   Mr. Burke, just say so and you'll get as much time as you need

24   to talk to him.  Okay?

25             THE DEFENDANT:  Yes, sir.

F7rifanp ag                    PLEA

1          THE COURT:  Are you able to understand, speak, read

2    and write English?

3          THE DEFENDANT:  I am.

4          THE COURT:  If you could remain standing so you could

5    take the oath, please.

6          (Defendant placed under oath)

7    BY THE COURT:

8    Q.  The first thing to advise you is that now that you've taken

9    the oath, all the answers you give to the questions are subject

10   to the penalties of perjury.  Perjury is intentionally lying

11   under oath about an important or material matter.  If you were

12   to do that here today you could be prosecuted for the crime of

13   perjury which is separate and apart from the charge contained

14   in Count 3 of the indictment.  Do you understand that?

15   A.  Yes, sir.

16   Q.  I'm sure Mr. Burke has gone over this with you.  I just

17   want to give you a sense of how we're going to proceed.  We're

18   going to start off where you are going to be asked some

19   questions about yourself.  These are standard questions that

20   are asked of everybody who says that he or she wants to plead

21   guilty.  And the purpose of these questions is not to

22   unnecessarily pry into your personal life but to assist in the

23   determination that you're ready, willing and able to go forward

24   today.

25          From there we're going to talk about your

F7rifanp ag                    PLEA

1   constitutional rights and we're going to focus on your trial

2   rights, most of which you would be giving you if you decide you

3   want to plead guilty.

4           Then we're going to talk about Count 3 in particular

5   in the indictment, what the charge alleges, and what the

6   elements or types of facts are that would have to be proven or

7   established before you could be convicted of the charge.

8           And then we're going to talk about the very important

9   subject of consequences focusing on the punishment you face if

10  convicted of this charge.  We'll talk about sentencing so you

11  know how that works.  We'll talk about the plea agreement.

12          And then at the end I'll ask the government to

13  summarize the proof it would offer if you elected to go to

14  trial.  After that you're going to be asked how you wish to

15  plead.  You can, of course, continue with your not guilty plea

16  and the case will proceed from there.  But if you say you want

17  to plead guilty you're going to be asked to describe what you

18  did that makes you believe you're guilty.  If you want to talk

19  to Mr. Burke for any reason whatsoever just say so and you'll

20  get as much time as you need to talk to him.  We are not in a

21  hurry.  Okay?

22  A.  Yes.

23  Q.  How old are you, sir?

24  A.  56 years old.

25  Q.  How far have you gone in school?

F7rifanp ag                    PLEA

1   A.  I have a bachelor's degree in police science.

2   Q.  Are you now or have you recently been under the care of a

3   doctor or psychiatrist?

4   A.  I am now.

5   Q.  For the last 18 months, as Mr. Burke said?

6   A.  Psychiatrist more than that.  But Bruce Friedman, licensed

7   social worker, 18 months.

8   Q.  And I gather you have been prescribed certain medication,

9   is that right?

10  A.  Yes.

11  Q.  What kind of medication are you being prescribed?

12  A.  Depression medication and anxiety.  Lexapro, Remeron,

13  trazodone and occasionally Lorazepam.

14  Q.  And if you take those medications as prescribed, do they

15  affect your ability to think clearly?

16  A.  No, they don't.

17  Q.  If you don't take them, does that affect your ability to

18  think clearly?

19  A.  Yes.

20  Q.  Have you taken the prescribed medications in the last two

21  days?

22  A.  Yes.

23  Q.  Have you ever been hospitalized or treated for narcotics

24  addiction?

25  A.  No, sir.

F7rifanp ag                    PLEA

1   Q.  Have you ever been addicted to narcotics?

2   A.  No, sir.

3   Q.  Other than the prescribed medication that you described

4   have you taken in the last two days any other drugs, medicine,

5   pills or any alcoholic beverages?

6   A.  No, sir.

7   Q.  How do you feel today?

8   A.  Anxious.

9   Q.  Sure.  And probably a little nervous.  Do you feel you

10  understand fully what's going on here today?

11  A.  I do.

12         THE COURT:  Mr. Burke, do you agree with that?

13         MR. BURKE:  I do, your Honor.

14         THE COURT:  Mr. Chow, do you have any reason to doubt

15  Mr.~Fanelli's competence to go forward today?

16         MR. CHOW:  No.

17         THE COURT:  I agree.  I find that Mr.~Fanelli is fully

18  competent to enter this plea today.  That's based on my own

19  observations of Mr.~Fanelli during this proceeding, the answers

20  to the questions he's been asked thus far, and the

21  representations of able and experienced counsel.

22  Q.  Have you had enough time to discuss this case with

23  Mr. Burke?

24  A.  I have.

25  Q.  Have you had enough time to talk to him about any possible

F7rifanp ag                          PLEA

 1   defenses that you might raise in this case?

 2   A.  Yes.

 3   Q.  Including the legal issues that we have been discussing for

 4   sometime.  You've had enough time to talk to him about those

 5   issues?

 6   A.  Yes.

 7   Q.  To date are you satisfied with Mr. Burke's representation

 8   of you?

 9   A.  I am satisfied.

10        THE COURT:  The next thing we're going to discuss is

11   the subject of your constitutional rights.  Mr. Burke, do you

12   have the advice of rights form there?

13        MR. BURKE:  I do, as amended.

14   Q.  Mr.~Fanelli, do you recognize that document?

15   A.  Yes, your Honor, I do.

16   Q.  Did you go over that document very carefully with

17   Mr. Burke?

18   A.  Yes, your Honor.

19   Q.  Did he answer any questions you had about it to your

20   satisfaction?

21   A.  Yes, he did.

22   Q.  Did you sign it?

23   A.  Yes, I did.

24        THE COURT:  Mr. Burke, you signed it as amended?

25        MR. BURKE:  Yes.

F7rifanp ag                    PLEA

1          THE COURT:  Before you and your client signed this

2    document, you went over it carefully with him?

3          MR. BURKE:  Yes, I did.

4          THE COURT:  He'll mark this as Court's Exhibit 1.

5    Q.  Much of what we're going to discuss is duplicative of

6    what's in this document, but the subject of your constitutional

7    rights is obviously very important so I do ask that you pay

8    careful attention as we go over your rights.

9          Under the laws and Constitution of the United States

10   you are entitled to a speedy and public trial before a jury if

11   you would like or a judge on all the charges that have been

12   brought against you.  Do you understand that?

13   A.  Yes, I do.

14   Q.  At the trial before you could be found guilty it would be

15   government's burden of proving your guilt beyond a reasonable

16   doubt and you would not have the burden of proving your

17   innocence.  Do you understand that?

18   A.  Yes, your Honor.

19   Q.  If the case were tried before a jury, before the jury could

20   return a guilty verdict all twelve jurors would have to be

21   satisfied that the government met its burden of proving your

22   guilt beyond a reasonable doubt and again you would not have to

23   prove your innocence.  Do you understand that?

24   A.  Yes, your Honor.

25   Q.  At the trial and at every stage of this case, you have a

F7rifanp ag                    PLEA

1   constitutional right to be represented by an attorney, and if

2   you could not afford an attorney, one would be provided for you

3   at public expense.  Do you understand?

4   A.  Yes, your Honor.

5   Q.  During a trial you would have the right with the assistance

6   of Mr. Burke to confront and cross-examine the witnesses

7   against you; also Mr. Burke could object to evidence he doesn't

8   think the government should be allowed to introduce; he could

9   offer evidence on your behalf; and he could even force people

10  to testify on your behalf through the use of the Court's

11  subpoena power.  Do you understand?

12  A.  Yes, your Honor.

13  Q.  At a trial, although you would have the right to testify if

14  you wanted to, you would also have the right not to testify,

15  and you would have the right not to have that choice held

16  against you in any way whatsoever.  Do you understand that?

17  A.  Yes, your Honor.

18  Q.  If you were convicted after a trial you would have the

19  right to appeal the guilty verdict.  Do you understand that?

20  A.  Yes, your Honor.

21  Q.  Even now as you're entering this plea you have the right to

22  change your mind, continue with your not guilty plea, and go to

23  trial on all the charges that have been brought against you.

24  Do you understand?

25  A.  Yes.

F7rifanp ag                    PLEA

1   Q.  If you plead guilty and I accept your plea, you're going to

2   give up your right to a trial and the other rights which we

3   just discussed other than your right to an attorney.  Do you

4   understand?

5   A.  Yes.

6   Q.  If you plead guilty and if I accept your plea that means

7   there will be no trial and I will enter a judgment of guilty

8   and I will impose sentence after considering what's known as a

9   presentence report and all the arguments on behalf of Mr. Burke

10  and all the arguments of Mr. Chow or one of his colleagues.  Do

11  you understand that?

12  A.  Yes.

13  Q.  Finally, if you plead guilty you will have to give up your

14  right not to incriminate yourself because you're going to have

15  to discuss what you did that makes you believe you're guilty,

16  in other words, admit and acknowledge your guilt.  Do you

17  understand that?

18  A.  Yes, your Honor.

19  Q.  The next thing we're going to discuss is the indictment and

20  in particular Count 3 of the indictment.  Have you been given a

21  copy of the indictment or otherwise gone over it with

22  Mr. Burke?

23  A.  Yes, I have.

24  Q.  Did he answer any questions about the indictment that you

25  had?

F7rifanp ag                    PLEA

1    A.  Yes, he did, your Honor.

2    Q.  Do you understand what the charges are that have been

3    brought against you?

4    A.  I do.

5    Q.  In particular, Count 3 alleges that on or about January 3

6    of 2014 that you knowingly, in the Southern District of New

7    York and elsewhere, that you knowingly possessed and accessed

8    with intent to view certain materials that were mailed, shipped

9    or transported using a means and facility of interstate and

10   foreign commerce, and in and affecting interstate and foreign

11   commerce.  In particular, it's alleged that you possessed in

12   your residence in Westchester County images of child

13   pornography that you downloaded from the Internet.  Do you

14   understand that that's the count in charge 3?  Do you

15   understand that that's the charge?

16   A.  Yes, your Honor, I do.

17   Q.  Are you okay?

18   A.  Yes.

19           THE COURT:  You should know that this charge is

20   brought pursuant to Title 18 United States Code Section

21   22A(a)(5)(B) and (b)(2).

22           Also we're going over the forfeiture allegations, is

23   that right, Mr. Chow?

24           MR. CHOW:  There is a forfeiture allegation.

25   Q.  Separate from this document, Mr.~Fanelli, there is what's

F7rifanp ag                    PLEA

known as the forfeiture allegation.  What this says is that if

convicted you could be required to forfeit the following to the

United States Government:  Any visual depictions that are

described in Title 18 United States Code Section 2251, 2251A or

2252, as well as any material, whether it's a book, magazine,

etc., which was produced, transported, mailed, shipped or

received in violation of Title 18 United States Code, Chapter

110.  Also, any property, real and personal, that constitutes

or is traceable to gross profits or other proceeds obtained

from the offense conduct and any property that was used or

intended to be used to commit or to promote the commission of

the offense conduct.  Do you understand that that's the type of

property you could be required to forfeit if convicted of Count

3?

A.  Yes, your Honor.

Q.  Also, if that property couldn't be found, then the

government would reserve the right to forfeit from you a

substitute asset, so something of equal value.  Do you

understand that?

A.  Yes.

THE COURT:  Mr. Chow, what are the elements that have

to be proven or established before Mr.~Fanelli can be convicted

of the third count?

MR. CHOW:  In order to prove the defendant guilty of

Count 3 of the indictment, the government would have to prove

F7rifanp ag                    PLEA

1    each of the following elements beyond a reasonable doubt:

2    First, that the defendant knowingly possessed materials that

3    contained at least one image of child pornography; second, that

4    such image or images contained in the materials had been

5    transported in interstate or foreign commerce, including by

6    computer, or that such image or images had been produced using

7    materials that had been mailed or shipped or transported in

8    interstate or foreign commerce by any means including by

9    computer; and third, that at the time of such possession, the

10   defendant believed that such image or images contained in the

11   materials constituted child pornography.

12           In order to establish venue the government would have

13   to prove by a preponderance of the evidence that venue is

14   proper in the Southern District of New York.

15   Q.  Did you follow what Mr. Chow said, Mr.~Fanelli, about the

16   elements that would have to be proven or established before you

17   could be convicted of this charge?

18   A.  Yes, your Honor.

19   Q.  Now, the next thing we're going to discuss is the subject

20   of consequences and we're going to start off by talking about

21   the sentence you could get if convicted of this offense

22   conduct.  Before we go over that information, what I want to

23   stress to you is that as we're here today, I do not know what

24   your sentence will be in this case.  And the reason I do not

25   know is because I've had no reason to think about what sentence

F7rifanp ag                    PLEA

1  you might receive, because as of this very moment you have been

2  convicted of nothing.  So what we're going to go over is not

3  what your sentence will be but what it can be, that is, the

4  maximum it can be under laws passed by Congress.  The idea in

5  going over this information is not to hint or suggest to you

6  what your sentence will or will not be, but to make sure that

7  you are fully informed as to what it can be if you decide you

8  what to plead guilty.  Do you understand that?

9  A.  Yes.

10  Q.  If convicted of Count 3, you face a maximum of ten years

11  imprisonment.  Do you understand that?

12  A.  Yes, sir.

13  Q.  You face a maximum of three years supervised release.  Do

14  you understand that?

15  A.  Yes, sir.

16  Q.  The fine you face is the greatest of three numbers,

17  $250,000, or twice the financial gain to you as a result of the

18  offense conduct, or twice the financial loss to anybody else as

19  a result of the offense conduct.  Do you understand that?

20  A.  Yes, your Honor.

21  Q.  You also face what's called a special assessment.  It's

22  like a fine, and here it has to be one hundred dollars, I have

23  no choice in that regard.  Do you understand that?

24  A.  Yes.

25  Q.  Also, you could be ordered to make restitution, to

F7rifanp ag                    PLEA

1    financially compensate any victims of the offense conduct.  Do

2    you understand that?

3    A.  Yes.

4    Q.  Then you also face the possibility of forfeiture as we just

5    went over regarding the forfeiture allegations in the

6    indictment.  Do you understand that?

7    A.  Yes, your Honor.

8    Q.  I mentioned that you face a maximum of three years

9    supervised release, Mr.~Fanelli.  I want to make sure you

10   understand what supervised release is and that you also

11   understand a very important aspect of supervised release.  As

12   the phrase implies, supervised release is the portion of the

13   sentence where you would be released from prison but subject to

14   the supervision of the U.S. Probation Office.  The reason you

15   would be subject to the Probation Office's supervision is that

16   while you're facing that portion of your sentence, you would be

17   subject to certain terms and conditions, basically rules.

18   Again, I don't know what your sentence will be so I don't know

19   what terms and conditions will be imposed in your case, but for

20   example, by law everybody who is serving a supervised release

21   portion of a sentence has to live by the condition that he or

22   she not break any other laws as well as not possess any drugs

23   or any guns.  And there are a bunch of other conditions that

24   are imposed at the time of sentence.  Do you understand that?

25   A.  Yes, your Honor.

F7rifanp ag                    PLEA

1    Q.   The important piece of this you should know is that if you

2    violate any of these terms and conditions, if you break any of

3    these rules, then you can go back to jail for up to the amount

4    of supervised release time to which you were originally

5    sentenced, do you understand that?

6    A.   Yes, your Honor.

7    Q.   Let me give you an example just so it's clear but stressing

8    again not to read into this example as a suggestion or hint as

9    to what your sentence will be.  Let's say you get sentenced to

10   some term of imprisonment and let's say you get sentenced to

11   three years of supervised release and let's say that during the

12   first two years there are no violations but in the last year

13   you get caught breaking a state law, that is, you commit a

14   violation.  Then, in this example, you could go back to jail

15   for up to three years because that was the supervised release

16   term that was imposed, meaning you don't get credit for time

17   you served in jail before supervised release started and you

18   don't get credit for the time that you were on supervised

19   release and not committing any violations.  Do you understand

20   that?

21   A.   Yes, your Honor.

22   Q.   Are you a citizen of the United States?

23   A.   Yes, sir.

24   Q.   Are you a citizen of any other country?

25   A.   No, sir.

F7rifanp ag                    PLEA

1    Q.   There are some things we should go over with respect to

2    sentencing but before we do that, if you're convicted of the

3    third count, because that's a felony, you also face some other

4    consequences.  In particular, you could be deprived of certain

5    civil rights which might include the right to vote, the right

6    to hold public office, the right to serve on a jury, the right

7    to possess a firearm, the right to be considered for certain

8    types of employment or to be bonded or to serve in the U.S.

9    military, as well as the right to obtain and possess certain

10   government-issued licenses including licenses that might be

11   necessary for certain professions and occupations.  Do you

12   understand that?

13   A.   Yes, your Honor.

14   Q.   The other thing you should know is that if convicted of the

15   third count, you could be subject to certain requirements under

16   the Sex Offender Registration and Notification Act which would

17   require you as a matter of federal law to register and keep

18   current your registration in each jurisdiction where you would

19   live, where you would work, or you would study.  Do you

20   understand that?

21   A.   Yes, your Honor.

22   Q.   To you need a break?

23   A.   No, sir.  I'm ready to go.

24   Q.   If you need a break, just say so, okay, Mr.~Fanelli.

25        With respect to sentencing there are some things that

F7rifanp ag                    PLEA

1   you should know.  The first thing is the determination as to

2   what your sentence will be is to be made solely by the Court.

3   Do you understand that?

4   A.  Yes, your Honor.

5          THE COURT:  Mr. Burke, I think we should take a small

6   break.  Is that okay?

7          MR. BURKE:  That's fine.

8          THE COURT:  Let's take five minutes.

9          (Recess)

10         MR. BURKE:  Thank you for that time.  We're prepared

11  to move forward.

12         THE COURT:  Mr.~Fanelli, if you want to take a break,

13  just let me know.

14  Q.  I think we left off we were talking about sentencing.  The

15  first thing I want to let you know is that the determination as

16  to what your sentence will be in this case is solely my

17  decision.  I will, of course, consider anything Mr. Burke says

18  on your behalf, anything the prosecutors say on the

19  government's behalf, but I'm not bound to follow what either

20  one of them says.  Do you understand that?

21  A.  Yes, sir.

22  Q.  The second thing you should understand is that regardless

23  of what happens at sentencing, the sentence you receive will

24  not be a basis for you to withdraw or undo or somehow take back

25  your plea once it's entered and received.  Do you understand

1   that?

2   A.  Yes, I do.

3   Q.  You have a right to appeal the sentence and there's some

4   waivers that we'll go over in a minute, but you haven't waived

5   your right to appeal any sentence the Court imposes.  So if

6   there's a sentence that the Court imposes and you haven't

7   waived your right to appeal the sentence, even if the appellate

8   court agrees that the sentence was illegal, all that would

9   happen is you would be re-sentenced, you would not get your

10  plea back.  Do you understand?

11  A.  Yes, sir.

12  Q.  Just so you understand the mechanics of sentencing, at

13  sentencing it's going to be my job to determine what sentence

14  is sufficient but no more than necessary to achieve the goals

15  of the sentencing laws as they apply to you and to this case.

16  Do you understand that?

17  A.  Yes, sir.

18  Q.  To do that I'm going to be required to consider certain

19  factors, they're called, and they're all set forth in a statute

20  passed by Congress.  They includes facts having to do with your

21  personal history, your story, facts having to do with the

22  offense conduct and other factors including something known as

23  the Sentencing Guidelines.  The guidelines are an attempt to

24  calculate a range of imprisonment that applies to your case.

25  Because there's a range, there's a low end, there's a high end,

F7rifanp ag                    PLEA

 1    it's calculated in months, it takes into consideration certain

 2    facts regarding the offense conduct, the criminal history of

 3    the person being sentenced or lack of criminal history.  The

 4    guidelines are only among the factors that require

 5    consideration.  They don't set the boundary of the sentence,

 6    meaning that if after considering all of the things I'm

 7    required to consider, the sentence that I decide is a fair

 8    sentence happens to be within the guidelines, then yes, I can

 9    impose that sentence; but if it turns out the sentence I think

10    is appropriate is outside the guidelines, whether it's below or

11    above the guidelines, I can impose that sentence but I just

12    can't go past the ten-year statutory maximum.  Do you

13    understand that?

14    A.  Yes, I do.

15    Q.  Now, has anybody threatened you or forced you in any way to

16    enter your plea here today?

17    A.  No, your Honor.

18    Q.  My understanding is that you're pleading guilty pursuant to

19    an agreement you have with the government that's dated July

20    24th of this year.  Is that right?

21    A.  It is right, your Honor.

22          THE COURT:  Mr. Burke, do you have the original

23    agreement there?

24          MR. BURKE:  I have a copy.  The government has the

25    original.

F7rifanp ag                    PLEA

1        THE COURT:  Can we pass the original over to

2   Mr. Burke, Mr. Chow.

3            (Handed to counsel)

4   Q.  Mr.~Fanelli, if you could take a look at that document, do

5   you recognize it?

6   A.  Yes, your Honor.  And I signed it.

7   Q.  Before you signed it, did you go over this document very

8   carefully with Mr. Burke?

9   A.  I did.

10  Q.  Did he answer any questions you had about it to your

11  satisfaction?

12  A.  He did.

13  Q.  Did you sign the last page?

14  A.  I did, your Honor.

15       THE COURT:  Mr. Burke, did you sign immediately

16  beneath your client?

17       MR. BURKE:  I did.

18       THE COURT:  Before you or your client signed this

19  document, you went over it carefully with him?

20       MR. BURKE:  I did.

21       THE COURT:  We'll mark that as Court's Exhibit 2.  And

22  I'll let the government hang onto the original.

23  Q.  You and Mr. Burke say you've gone over this document and I

24  have no reason to doubt that.  There are some things that I do

25  want to highlight about it.  The first thing is, understand

F7rifanp ag                    PLEA

1   that this is a contract.  It may look like a letter, at least

2   on the first page, but this is a contract that you have with

3   the United States Attorney's Office.  Do you understand that?

4   A.  Yes, I do.

5   Q.  That's the purpose to having you and your attorney and the

6   government's attorney sign this document.  However, I did not

7   sign this document so this document is only binding on you and

8   the government.  It's not binding on anybody else including

9   myself.  Do you understand that?

10  A.  Yes, your Honor.

11  Q.  Now, in this agreement at pages 2 and 3, you and the

12  government have a discussion there about the sentencing

13  guideline range and the result of that discussion is at page 3

14  under (c) sentencing range.  You and the government have agreed

15  to a so-called stipulated guideline range of 41 to 51 months

16  imprisonment.  Do you see that there?

17  A.  Yes, your Honor.

18  Q.  First, again, this is only between you and the government.

19  I'm not required to agree with you all that that is the

20  applicable guideline range.  Do you understand that?

21  A.  Yes, your Honor.

22  Q.  Even if that is the guideline range or whatever the

23  guideline range is, remember what we talked about a few minutes

24  ago, I'm not required to impose a sentence within the guideline

25  range.  I can impose a sentence within the range or if I think

F7rifanp ag                    PLEA

```
1    it's appropriate I can impose a sentence that falls outside the

2    range whether above or below the range.  Do you understand

3    that?

4    A.  Yes, your Honor.

5    Q.  At page 4, the third full paragraph, that long paragraph

6    there, at the beginning part of that paragraph what it says is

7    you've agreed you will not appeal or legally challenge,

8    including by way of a *habeas corpus* petition, or otherwise seek

9    a sentence modification of any sentence that is within or below

10   the stipulated guideline range.  Meaning, if I impose a

11   sentence between zero and 51 months then you have waived your

12   right to object to that sentence by way of appeal or *habeas*

13   *corpus* petition or any other way.  Do you understand that?

14   A.  Yes.

15   Q.  You have preserved your right to appeal any sentence above

16   51 months.  But even if I were to impose such a sentence and

17   even if you successfully appealed it, you would not get your

18   plea back, you would just get resentenced.  Do you understand

19   that?

20   A.  Yes.

21   Q.  The next paragraph says you're accepting the agreement and

22   deciding to plead guilty because you are guilty, and by

23   entering the guilty plea you're waiving any right you have to

24   withdraw your plea or legally challenge any conviction

25   resulting from the plea, based on the claim that the government
```

F7rifanp ag                    PLEA

1    failed to produce certain discovery material.  And there's a

2    reference there to the *Jencks Act* and to two Supreme Court

3    cases.  Do you see that?

4    A.  Yes, your Honor.

5    Q.  The *Jencks Act* is a federal statute that requires federal

6    prosecutors to turn over to the defendant the prior written or

7    recorded statements of the government's witnesses that relate

8    to the subject matter of the government witness' testimony.  Do

9    you understand that?

10   A.  Yes.

11   Q.  The *Brady* case is where the Supreme Court said that anybody

12   charged with a crime has a right under the due process clause

13   to be provided by the prosecutor with exculpatory evidence or

14   information that could lead to exculpatory evidence that's part

15   of the prosecutor team's file.  Do you understand that?

16   A.  Yes.

17   Q.  *Giglio* is where the Supreme Court said that anybody charged

18   with a crime has a due process right to be provided by the

19   prosecutor with any information that could be used to attack

20   the credibility of the government's witnesses.  Do you

21   understand that?

22   A.  Yes.

23   Q.  Unless the government has failed to produce discovery that

24   actually establishes your innocence, the government's otherwise

25   failure to provide with its obligations under the *Jencks Act*

F7rifanp ag                    PLEA

1    and consistent with those two Supreme Court cases will not be a

2    basis for you to take back your plea or legally challenge any

3    conviction resulting from the plea.  Do you understand that?

4    A.  Yes.

5    Q.  There's a couple of other provisions here in this

6    agreement.  The last paragraph on page 1 and going on to page 2

7    talks about the property that you've agreed to forfeit, and

8    this includes a computer containing hard drives with certain

9    serial numbers.  Do you see that there?

10   A.  Yes, I do.

11         THE COURT:  And then the agreement also has on page 5

12   the registration requirement that we've already discussed.  Is

13   there anything else, Mr. Burke, you think I should go over with

14   your client regarding the terms of the agreement?

15         MR. BURKE:  No, your Honor.  The only additional point

16   that's new in the government's agreement is not waiving the

17   ineffective assistance.  I think you've addressed that he's

18   satisfied with the assistance provided to date.  But now we see

19   in the plea agreements the bottom of the waiver paragraph,

20   where they said, notwithstanding the foregoing, nothing in this

21   paragraph shall be construed as a waiver of the right of the

22   defendant to assert a claim of ineffective assistance of

23   counsel, whether on direct appeal, collateral review, or

24   otherwise.

25   Q.  The last sentence there, Mr.~Fanelli, says, the last

F7rifanp ag                        PLEA

1   sentence of the third paragraph on page 4 says:  "Nothing in

2   this paragraph shall be construed to be a waiver of whatever

3   rights the defendant may have to assert claims of ineffective

4   assistance of counsel whether on direct appeal, collateral

5   review or otherwise.  Rather, it is expressly agreed that the

6   defendant reserves those rights."  So the rights are not

7   clearly explained there, but whatever right you might have to

8   challenge the effective assistance of counsel that you got from

9   Mr. Burke here, you would preserve those rights, this agreement

10  notwithstanding.  Do you understand that?

11  A.  Yes, I do.

12          THE COURT:  Thank you for bringing that to my

13  attention, Mr. Burke.  Anything else, Mr. Burke, with respect

14  to the agreement?

15          MR. BURKE:  No.

16          THE COURT:  Mr. Chow, anything with respect to the

17  agreement?

18          MR. CHOW:  Nothing in addition, Judge.

19  Q.  Mr.~Fanelli, has anybody made you any promises other than

20  what's in that agreement to get you to plead guilty?

21  A.  No, sir.

22  Q.  Has anybody promised you what sentence you would receive if

23  you plead guilty?

24  A.  No, sir.

25          THE COURT:  Mr. Chow, if you could summarize the proof

F7rifanp ag                    PLEA

1    the government would offer if Mr.~Fanelli elected to go to

2    trial.

3              MR. CHOW:  The government's proof at trial would

4    include materials referenced in the criminal complaint in this

5    case, such as law enforcement testimony that they were able to

6    identify the defendant's IP address as one that had made over

7    100 files believed to contain images of child pornography

8    available for download through a file-sharing program called

9    Ares.  Law enforcement testimony would also show that they were

10   able to download three files that contained images of child

11   pornography directly from the defendant's computer through

12   Ares.  The proof would also include testimony of statements

13   made by the defendant wherein he admitted to using the

14   file-sharing program Ares to access child pornography.

15   Q.  Mr.~Fanelli, what Mr. Chow has done is summarize the proof

16   that the government would offer if you elected to go to trial.

17   Did you follow what he said?

18   A.  Yes, I did.

19   Q.  How do you wish to plead to Count 3 of the indictment,

20   guilty or not guilty?

21   A.  Your Honor, I plead guilty to Count 3 of the indictment.

22   Q.  If you could describe what you did that makes you believe

23   you're guilty of Count 3.

24   A.  Your Honor, on or about January 3, 2014 I did, on multiple

25   occasions, use the Ares peer-to-peer network to possess child

F7rifanp ag                    PLEA

1   pornography.  I know what I did was wrong and against the law.
2   I'm truly sorry for the harm that I have caused, especially to
3   the victims, in this case, but also to my family, my police
4   department, where I had worked for so many years, and to the
5   government.
6   Q.  And in what town did this happen, Mr.~Fanelli?
7   A.  Where I worked?  Oh, Mahopac, New York.  Putnam County.
8   Q.  That's where you downloaded the material, is that right?
9   A.  That's correct, your Honor.
10          THE COURT:  Mr. Burke, I take it there's no contest to
11   the interstate component of this.
12          MR. BURKE:  No, your Honor.  Nor venue.
13   Q.  Mr.~Fanelli, you understood what you were doing was
14   illegal?
15   A.  Yes, your Honor.
16          THE COURT:  Anything else by way of allocution,
17   Mr. Chow?
18          MR. CHOW:  I believe the defendant used the word
19   access.  I just wanted to make clear that he possessed
20   materials.
21   Q.  By accessing it, did it give you possession or at least the
22   ability to possess the materials, Mr.~Fanelli?
23   A.  I believe I said possess, but if I did not, possess.
24          THE COURT:  Anything else, Mr. Chow?
25          MR. CHOW:  Nothing further, your Honor.

F7rifanp ag                     PLEA

1          THE COURT:  Anything else, Mr. Burke?

2          MR. BURKE:  No, your Honor.

3    Q.  Mr.~Fanelli are you pleading guilty to this charge because

4    you are guilty?

5    A.  Yes, your Honor.

6          THE COURT:  Mr. Burke, do you agree that there's a

7    sufficient legal and factual basis to accept the plea?

8          MR. BURKE:  I do.

9          THE COURT:  Mr. Chow?

10          MR. CHOW:  Yes, your Honor.

11          THE COURT:  I agree.  Because Mr.~Fanelli has been

12    advised of his rights, because he's been advised of the charge

13    in Count 3, the elements of the charge and the consequences if

14    convicted of the charge, and because Mr.~Fanelli has been found

15    to be competent to enter this plea and he's acknowledged that

16    he's guilty as charged in Count 3, the Court finds that

17    Mr.~Fanelli has knowingly and voluntarily entered this plea and

18    the Court will accept the plea and enter a judgment of guilty.

19          Can we set sentencing for how far out, Mr. Burke?

20          MR. BURKE:  I was going to suggest a date in November.

21    I think that should provide Probation ample time.

22          THE COURTROOM DEPUTY:  November 12, ten o'clock.

23          THE COURT:  Here's what's going to happen,

24    Mr.~Fanelli.  The Probation Department is going to prepare this

25    presentence report that I referenced briefly during the

F7rifanp ag                    PLEA

1    allocution.  The purpose of the report is to provide as much

2    information as is practical under the circumstances about you

3    and about the offense conduct.  To prepare this report the

4    Probation Department will conduct is own inquiry which means

5    they'll go talk to the government about the offense conduct

6    mostly and they'll talk to you.  And I'll note that Mr. Burke

7    wants to be present when they do talk to you.  They're going to

8    talk to you about everything including your personal history,

9    including family, medical, education, employment.  Answer those

10   questions that Mr. Burke says you can answer, because there may

11   be valid legal reasons why he's not going to want you to answer

12   those questions.  Please make sure that whenever you do answer

13   the Probation Department's questions you answer them

14   truthfully.  You obviously don't want them to report that

15   you're dishonest.  But also because you know more about

16   yourself than anybody and it's in your interest that this

17   report be as accurate as it can be especially about yourself.

18   You have every reason to be honest with them.  Before a final

19   report is distributed they'll give a draft to Mr. Burke, he'll

20   go over it with you.  Please let him know if there's anything

21   in the report that is inaccurate so he can try to get the

22   Probation Department to fix it.

23        With respect to bail, is there anything else you'd

24   like to add to what's already are been said, Mr. Burke?

25        MR. BURKE:  No.  I would reserve if necessary, but I'm

F7rifanp ag                    PLEA

1    not going to add anything further based on our prior colloquy.

2                THE COURT:  The one thing that you sort of alluded to

3    that I think might merit some discussion is the combination of

4    the work that Mr.~Fanelli has done being in law enforcement and

5    the nature of the charge of conviction here might make him

6    being remanded locally problematic, including in particular

7    Westchester County jails.  One of two things would happen.  He

8    would be housed somewhere else or he would be put in solitary,

9    which would complicate, no doubt, the treatment issues that

10   you've raised.

11               MR. BURKE:  Yes, your Honor.  And a long while back we

12   represented a police officer, two of them, not the same type

13   conduct, but nonetheless one was housed in Texas, the other was

14   in Kansas.

15               THE COURT:  Pending appeal?

16               MR. BURKE:  This is a long time ago.  Some were on

17   remand, and one was my father's case a long time ago, and he

18   was in La Tuna, Texas.  My client went to Kansas.  Some were

19   pending appeal, some were when he was remanded.  He had other

20   issues elsewhere.  That obviously complicated things for the

21   presentence interview.  But I do think that if he was in some

22   kind of protective custody or solitary that his treatment would

23   be severely limited and I'm almost certain that he would not be

24   housed here or in New York.  So that would also complicate

25   probation or any other kind of treatment that he received.

F7rifanp ag                    PLEA

1          THE COURT:  I already went through what the law is but

2      focusing especially on what the Second Circuit said that the

3      test under 3145(c) is a flexible test and there's wide latitude

4      to determine whether or not a particular set of circumstances

5      is exceptional.  The Court's finding is that there are a set of

6      circumstances that are exceptional and they are the combination

7      of the following.

8          In terms of some basic facts, Mr.~Fanelli has been

9      fully compliant with the conditions of his bail thus far.  He's

10     been subject to house detention without any incident.  He's not

11     likely to flee, it's the Court's finding, or present a danger.

12     Those are not by themselves exceptional because those should be

13     normal, but that weighs in Mr.~Fanelli's favor here.   Added to

14     that is the strong family support that he received which adds

15     further to the finding that he's not a risk of flight or a

16     danger.

17         The offense of conviction, the conduct

18     notwithstanding, there's also the treatment that Mr.~Fanelli

19     has been receiving for some time that includes both therapy

20     sessions as well as medication.  The former would be disrupted

21     completely.  The latter could be certainly interrupted, it

22     would potentially be complicated depending on where Mr.~Fanelli

23     would be housed, which is another fact that's complicated here

24     because of Mr.~Fanelli's work as a law enforcement official and

25     given the nature of the offense conduct housing him pending

43

F7rifanp ag                    PLEA

1    sentence would be complicated.  He may not be housed here

2    locally and that would obviously affect sentencing preparation

3    but more importantly it would affect his ability to continue

4    the treatment, it would separate him from his family and that

5    would even be more complicated if he were housed somewhere in

6    the New York Metropolitan area but subject to some protective

7    custody or solitary confinement.  And all indications are that

8    this treatment Mr.~Fanelli has been important and helpful to

9    him.

10         The combination of those conditions plus the fact that

11   he's not facing the mandatory minimum, as Mr. Burke points out,

12   that means that the disruption of the treatment is not

13   inevitable, we'll see what the sentence is, at least there's no

14   mandatory minimum.

15         That set of circumstances the Court finds exceptional,

16   so therefore grants Mr.~Fanelli's application for bail pending

17   sentence which we've set for November.

18         All of that being said, Mr.~Fanelli, I want to advise

19   you that it is a separate crime for you to fail to appear at a

20   court conference or date that's been set, or obviously, if you

21   violate the conditions of your bail, that could result in your

22   remand.  Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Mr. Burke, is there anything else?

25         MR. BURKE:  No, thank you, your Honor.

F7rifanp ag                         PLEA

1            THE COURT:  Mr. Chow, is there anything else?

2            MR. CHOW:  Nothing further from the government.

3            THE COURT:  Then we're adjourned.  Thank you.

4            (Proceedings adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25